UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GARY NICHOLSON                                                                    PLAINTIFF
ADC #137524

V.                                          No. 4:22-CV-285-JTR

KRISTEN MARTER,
Nurse, Wellpath Medical;
and STEPHANIE BANKS,
Nurse, Wellpath Medical                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER[1]

### I. Introduction

On March 28, 2022, Plaintiff Gary Nicholson ("Nicholson"), a prisoner incarcerated in the Cummins Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint alleging that Defendants violated his constitutional rights. Specifically, Nicholson alleges that, in December 2021 and January 2022, Nurse Kristen Marter ("Nurse Marter") and Nurse Stephanie Banks ("Nurse Banks")[2] infringed on his constitutional right to access the courts by denying him access to his medical records that were greater than one year old. *Doc. 1 at 4–6*.

---

[1] By written consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See Doc. 13*.

[2] The Clerk's office is directed to update the docket sheet to reflect Nurse Marter and Nurse Banks' full names.

According to Nicholson, he needed those medical records to pursue a § 1983 inadequate medical care claim. *Id.*

Defendants have filed a Motion for Summary Judgment (*Doc. 14*), a Brief in Support (*Doc. 16*), and a Statement of Undisputed Facts (*Doc. 15*) arguing that all of Nicholson's claims should be dismissed because he failed to exhaust his administrative remedies. Nicholson has filed a Response to Defendants' Motion for Summary Judgment (*Doc. 19*) and a Response to Defendants' Statement of Undisputed Facts (*Doc. 18*). Defendants have filed a Reply (*Doc. 20*). Thus, the issue of exhaustion is joined and ready for disposition.

For the reasons explained below, Defendants' Motion for Summary Judgment (*Doc. 14*) is GRANTED.[3]

## II. Discussion

### A. The PLRA's Mandatory Exhaustion Requirements

The PLRA requires prisoners to exhaust all available administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[3]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action; and (2) complete the exhaustion process *before* initiating the § 1983 action. *Nicholson,* 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Nicholson,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits") (cleaned up). Thus, to satisfy the PLRA, Nicholson must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance

of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* ADC Adm. Dir. ("AD") 19-34 § IV(C)(4), (D)(2), & (E)(2).[4]

The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. I ("Briefly state your *one* complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. The ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure *before* filing a Section 1983 lawsuit… the lawsuit or claim may be summarily dismissed" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (advising inmates that full exhaustion of the grievance procedure is a prerequisite to filing a lawsuit).

Thus, Nicholson was required to fully and properly exhaust his access-to-courts claim against each Defendant by raising and pursuing it through all three steps of the ADC's grievance process. *Id.* at §§ IV(D)–(G). This required him to file a:

---

[4] Defendants attach a copy of AD 19-34 to their Motion for Summary Judgment. *Doc. 15-1*.

4

(1) "Step-One" informal resolution to a "designated Problem Solver" within fifteen days of each incident which named each Defendant and explained their involvement in his complaint; (2) "Step-Two" formal unit-level grievances raising that complaint with the Health Services Administrator within three working days of the denial of the informal resolution; and (3) "Step-Three" appeal to the "appropriate Chief Deputy/Deputy/Assistant Director" within five working days of the Health Services Administrator's decision on his Step-Two grievance. *Id*.

Importantly, prisoners' Step-Three appeals must be deposited into a designated grievance box. *Id.* at § IV(G)(2). Once the Step-Three appeal is transmitted to the Deputy Director, he has five working days to acknowledge the receipt of the appeal. *Id.* at § IV(G)(5). The Deputy Director then has an additional thirty working days to issue a written response to the Step Three appeal. *Id.* at § IV(G)(6). Finally, a Step-Three appeal may not "list additional issues, requests, or names which were not part of the original grievance, as those will not be addressed." *Id.* at § IV(G)(2).

### III. Nicholson's Grievances

The undisputed facts establish that, during the relevant time period, Nicholson submitted only three grievances against medical personnel: CU-21-01612; CU-21-01667; and CU-22-00159. *Doc. 18 at 3–4, ¶ 9*. Before reaching the merits of Defendants' Motion for Summary Judgment, it is important to understand the claims

raised in those grievances, each of which Nicholson pursued through at least Step Two of the ADC's exhaustion process.

      A.      **CU-21-01612 (*Doc. 15-2 at 1–4*)**

      1.      On December 6, 2021, Nicholson submitted a Step-One informal resolution grieving that non-Defendant Nurse Jones provided him the wrong medication at pill call. *Doc. 15-2 at 4*.

      2.      This grievance is *unrelated* to the access-to-courts claim Nicholson is pursing in this § 1983 action. Furthermore, Nicholson admits that he did not pursue CU-21-01612 through all three steps of the ADC's grievance procedure.

      3.      Thus, Nicholson cannot rely on CU-21-01612 to establish that he fully exhausted his administrative remedies on any of the claims he is asserting in this action. *Doc. 18 at 4, ¶ 10*.

      B.      **CU-21-01667 (*Doc. 15-2 at 2–11*)**

      4.      On December 18, 2021, Nicholson submitted a Step-One informal resolution *related to* the access-to-courts claim he is pursing in this action. *Doc. 15-2 at 11*.

      5.      Nicholson's informal resolution stated that he had put in a request to review his ADC medical records from July 1, 2019 to September 10, 2019, but had not yet been allowed to view the records. He requested that a date and time be set for him to review those records. *Id*.

6. The response to the informal resolution stated that Nicholson had "been scheduled for medical jacket review." *Id.*

7. On December 23, 2021, Nicholson submitted a Step-Two formal grievance, which was designated grievance CU-21-01667. In this grievance, Nicholson complained about "not receiv[ing] [a] date for scheduled review. Still waiting. When is the review [?]" *Id.*

8. On January 24, 2022, the Health Service Administrator's response stated that: "Documentation indicates you reviewed your medical jacket January 6, 2022 from 9:26 AM to 9:42 AM." *Doc. 15-2 at 7*.

9. On February 9, 2022, Nicholson signed a Step-Three appeal. *For the first time*, he named Defendants Nurse Marter and Nurse Banks and explained that they had refused to let him see his medical records, from July 1, 2019 to September 10, 2019, because those records were more than one year old. *Id.* He also alleged that they both "falsified documents" by stating that he had reviewed his medical records on January 6, 2022. *Id. at 8*.

10. It appears Nicholson may have placed his Step-Three appeal in the designated grievance box around the time he signed it on February 9. However, the Assistant Director's office did not receive the appeal until March 3, 2022. *Doc. 15-2 at 6*.

11. The Assistant Director acknowledged receipt of the appeal in writing and provided Nicholson notice that, pursuant to the ADC grievance procedure, he would receive an answer to the appeal by April 14, 2022. *Id.*

12. On March 28, 2022, *before* Nicholson had received a response to his Step-Three appeal, he initiated this § 1983 action.[5] *Id.*

13. On April 13, 2022, Assistant Director Rory Griffin ("Griffin") issued his written response upholding the Health Service Administrator's Step-Two finding that Nicholson had been allowed to review his medical records on January 6, 2022. *Doc. 15-2 at 5*. Griffin also noted that, because Nicholson's complaints against Nurse Marter and Nurse Banks were raised *for the first time on appeal*, they were "not part of the appeal and…[would] not be addressed." *Id.*

14. Accordingly, because Nicholson did not fully and properly exhaust CU-21-01667 *before* he initiated this action, he cannot rely on that grievance to establish

---

[5] Nicholson signed and dated his Complaint on March 15, 2022. *Doc. 1 at 13*. It was received and docketed in the *Western* District of Arkansas on March 21, 2022. *See Nicholson v. Dr. Steive Jeffery et al.*, No. 1:22-CV-1011-SOH (W.D. Ark. Mar. 21, 2022), ECF No. 11. On March 28, 2022, United States Magistrate Judge Barry A. Bryant severed Nicholson's claims against Nurse Banks and Nurse Marter and transferred those claims to the United States District Court for the Eastern District of Arkansas, where the Clerk of Court filed the Complaint initiating this action. *Doc. 2*.

Because the parties agree that March 28, 2022 is the relevant date for determining if Nicholson had exhausted his administrative remedies, the Court will use that date (which is the most favorable date possible for Nicholson) in deciding Defendant's Motion for Summary Judgment. However, case law supports this action being initiated on March 15, the date Nicholson filed these claims in the Western District of Arkansas.

his exhaustion of administrative remedies on any of the claims he is asserting against Nurse Marter and Nurse Banks in this action.

### C. CU-22-00159 (*Doc. 15-2 at 12–16*)

15. On February 1, 2022, Nicholson submitted a Step-One informal resolution alleging that Nurse Banks had not provided the medical records he had requested "over a month ago" because "she was still working on it." *Doc. 15-2 at 16*.

16. The Step-One "Problem Solver" responded that, because Nicholson had viewed his medical records on January 6, 2022, he would not be eligible, under ADC policy, to view those records again until February 6, 2022. *Id.*

17. On February 2, 2022, Nicholson submitted a Step-Two formal grievance, which was designated as CU-22-00159. *Id.* He grieved Nurse Banks's decision not to allow him immediate access to the requested medical records. According to Nicholson, Nurse Banks's decision was based on his medical records being over a year old and the medical treatment he received being provided at a different ADC unit. *Id.*

18. On March 1, 2022, the Health Services Administrator designee responded that, per Nurse Marter, Nicholson would be allowed to review his medical jacket that week. *Doc. 15-2 at 14*.

19. On March 4, 2022, Nicholson filed his Step-Three appeal claiming that Nurse Marter and Nurse Banks had not "allowed [him] to review [his] medical jacket." *Id.*

20. The Assistant Director's office acknowledged receipt of the Step-Three appeal on March 10, 2022 and noted that a response would be provided by April 21, 2022. *Doc. 15-2 at 13*. Instead of waiting for the Assistant Director to rule on the Step-Three appeal, as Nicholson was required to do to complete the exhaustion of his administrative remedies, he initiated this § 1983 action on March 28, 2022. *Doc. 1*.

21. On April 20, 2022, the Assistant Director provided his response to the CU-22-00159 Step-Three appeal. *Doc. 15-2 at 12*. He found Nicholson's grievance to be "with merit," because his access to his medical records had been delayed. However, the Assistant Director went on to find that the grievance had been *fully resolved* because Nicholson had been allowed access to the requested medical records on March 21, 2022. *Id.*

22. By failing to fully and properly exhaust CU-22-00159 *before* he initiated this action, Nicholson *cannot* rely on that grievance to establish that he exhausted his administrative remedies on any of the claims his is asserting in this action.

## IV. Discussion

In their Motion for Summary Judgment and Reply, Defendants argue that Nicholson's claims must be dismissed because he did not fully and properly exhaust his administrative remedies *before* initiating this action. In his Response, Nicholson argues that "at the time of filing [,] [he] believed all remedies had been exhausted to the best of his knowledge." *Doc. 19 at 2*. He also makes the entirely conclusory and factually unsupported allegation that he was "unable to exhaust remed[ies]." However, in doing so, he provides no explanation of how he was "unable" to exhaust those administrative remedies.[6]

Based on the plain language of the PLRA, a prisoner must fully and properly exhaust his available administrative remedies *before* filing suit in district court.

---

[6] In *Ross v. Blake*, 578 U.S. 632 (2016), the Court described three ways in which an administrative remedy can be made "unavailable" to an inmate:

> First,…an administrative procedure is unavailable when…it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
> 
> *****
> 
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use…When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available."
> 
> *****
> 
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation…And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.

*Id.* at 643–44 (internal citations omitted). Based on the undisputed facts, none of those situations existed in this case.

11

*Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id.*

Nicholson filed two grievances pertinent to his access-to-courts claim against Nurse Marter and Nurse Banks: CU-21-01667 and CU-22-00159. He initiated this action on March 28, 2022—several weeks *before* the Assistant Director issued his final Step-Three decisions on CU-21-01667 (on April 13) and CU-22-00159 (on April 20).

The record makes it clear that, in connection with both of those grievances, Nicholson proceeded through the three-step grievance procedure, but inexplicably failed to *complete* the third step by allowing the Assistant Director to make his final Step-Three decision before Nicholson initiated this action. Accordingly, because his conclusory assertion that he was "unable" to exhaust his administrative remedies is in direct conflict with the undisputed facts, it carries no evidentiary weight.

Likewise, Nicholson's subjective belief that he properly exhausted his administrative remedies is not only immaterial to the exhaustion analysis, it also is plainly contradicted by the record. *See Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000 (The PLRA's exhaustion requirement "says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him."). The Deputy Director's office acknowledged receipt of both of Nicholson's Step-Three appeals and explicitly told him the date he could expect

12

to receive the Assistant Director's final Step-Three decisions on those two grievances. Nicholson simply "jumped the gun" by filing this § 1983 action before the Assistant Director made his final ruling on Nicholson's Step-Three appeals.[7]

Nicholson, before initiating this action, failed to fully and properly exhaust his administrative remedies on the claims he is asserting against Nurse Marter and Nurse Banks. Accordingly, under the PLRA, dismissal is mandatory. *Johnson,* 340 F.3d at 627.

## V. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Defendants' Motion for Summary Judgment (*Doc. 14*) is GRANTED.

2. Nicholson's access-to-courts claims against Nurse Marter and Nurse Banks are DISMISSED, without prejudice.

3. Judgment will enter accordingly, and this case will be CLOSED.

4. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an *in forma pauperis* appeal of this Order or the accompanying Judgment would not be taken in good faith.

---

[7] The objectives of the PLRA's exhaustion requirement include: (1) allowing a facility the opportunity to address complaints before being subjected to suit; (2) "reducing litigation to the extent complaints are satisfactorily resolved," and (3) "improving litigation that does occur by leading to the preparation of a useful record." See *Jones v. Bock*, 549 U.S. 199, 219 (2007).
Nicholson acknowledges that his use of the ADC's grievance procedure ultimately resulted in hm being allowed to review the requested medical records. *See* Doc. 19 at 2, ¶ 2 (Nicholson's Response indicating that his only remaining complaint is that there was a delay before he was "actually [] able to review [his] medical jacket.").

SO ORDERED this 24th day of March, 2023.

                                                                  _____
                                                   UNITED STATES MAGISTRATE JUDGE